**In re AIR SAFETY INTERNATIONAL, L.C., and Camber Flight Simulation, L.C., Debtor.**

**Lorenzo Williams, individually, and Gary, Williams, Parenti, et al., Appellants,**

**v.**

**Richard L. Brown, individually, and Richard L. Brown, P.A., Appellees.**

**Nos. 99–36290–BKC–SHF, 00–30087–BKC–SHF.**

United States District Court, S.D. Florida.

Dec. 12, 2003.

James Wallace Beasley, Jr., Beasley & Hauser, West Palm Beach, FL, for Lorenzo Williams, Esq, appellant.

Leslie Gern Cloyd, Berger Singerman, Las Olas Centre II, Fort Lauderdale, FL, Russell Francis Bergin, Orlando, FL, for Richard L. Brown, PA, appellee.

### ORDER REVERSING BANKRUPTCY COURT'S ORDER AND REMANDING TO BANKRUPTCY COURT FOR EVIDENTIARY HEARING

COHN, District Judge.

**THIS CAUSE** is before the Court pursuant to the appeal of Appellants Lorenzo Williams ("Mr. Williams") and the law firm of Gary, Williams, Parenti *et al.* (collectively, "Williams") from the United States Bankruptcy Order styled "Order Partially Granting Richard L. Brown, P.A.'s Motion for Final Compensation as Special Counsel to the Trustee Pursuant to the Court's November 14, 2000 Order Granting Chapter 7 Trustee's Motion to Employ Special Counsel" entered on December 24, 2002 (hereinafter "December 24, 2002 Order"). (Record on Appeal Docket Entry ("ADE") 361). Upon consideration of the appeal,[1] the oral arguments of counsel for the parties at the hearing for this cause held on December 3, 2003, and the record in this cause,[2] the Court finds as follows:

---

1. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).

2. The Court notes that some filings in this case appear on the docket for the related case 03–80122–Civ–Cohn. As a result, the Court has reviewed the pleadings in both case number 03–80236–Civ–Cohn *and* case number 03–80122–Civ–Cohn.

## I. *BACKGROUND*

This appeal concerns a dispute as to the division of fees between co-counsel who successfully represented the debtor Air Safety in complex commercial litigation against aviation giant Lockheed Martin Aeronautics ("Lockheed"). Air Safety, the debtor, filed a lawsuit against Lockheed for breach of contract, retaining Appellees Richard L. Brown ("Mr. Brown") and Richard L. Brown, P.A. (collectively, "Brown") as its counsel on a contingency fee basis. After Air Safety entered bankruptcy, Brown continued to represent Air Safety in the *Lockheed* case. The Bankruptcy Trustee concluded that additional counsel was needed and hired Williams as lead counsel. The Trustee applied for authorization from the Bankruptcy Court to retain Williams and Brown as co-counsel for a total contingency fee of 40% of any recovery. Subsequently, Brown informed the Trustee (Williams claims fraudulently) that he and Williams had agreed to a fee division and produced to the Trustee an October 18, 2000 letter purportedly setting out such agreement that Williams claims was neither signed nor agreed to by Williams. Following an October 19, 2000 hearing on the motion to retain Williams and Brown, the October 18, 2000 letter was submitted by the Trustee's counsel to the Court attached to a revised proposed Order Granting Chapter 7 Trustee's Motion to Employ Special Co–Counsel. This proposed Order authorizing the retention of Williams and Brown as co-counsel was signed by the Court on November 14, 2000. Specifically, the Order granted the application of the Chapter 7 Trustee for authorization to employ Williams "as co-counsel upon the terms and conditions set forth in the Chapter 7 Trustee's Motion to Employ Special Co–Counsel, and as outlined within the October 18, 2000 letter attached hereto, as amended, in the Con-tract for Services attached hereto." (ADE # 161 at 2).

On March 14, 2002, after the *Lockheed* case was settled, Williams advised the Bankruptcy Court that the November 14, 2000 Order had been entered erroneously based on Brown's false *ex parte* misrepresentation to the Trustee about the existence of an attorneys' fee division agreement between Brown and Williams. Williams requested that the Order therefore be modified. Williams also alleged that the November 14 Order violated due process because it should not have addressed this fee division issue without notice to all counsel and an opportunity to be heard. The Bankruptcy Court did not hold an evidentiary hearing. After holding a non-evidentiary hearing on April 17, 2002, the Bankruptcy Court ruled on December 24, 2002 that "it cannot modify the November 14, 2000 Order." (ADE # 361 at 2). On appeal, Williams challenges the Bankruptcy Court's holding that it could not modify its November 14, 2000 Order.

### A. *Appellants Williams' position*

Williams is challenging the Bankruptcy Court's refusal to modify the November 14, 2000 Order on the following grounds:

1. The Bankruptcy Court erroneously concluded that it could not modify its prior November 14, 2000 Order. Under the Bankruptcy Code, orders appointing counsel are interlocutory, non-final and not appealable. As a result, the Bankruptcy Court had the power to modify or correct any interlocutory order prior to the end of the case, particularly an order entered based on fraud or mistake. The Court also had the continuing power to ensure that fees were paid out in proportion to the services of counsel.

2. The Bankruptcy Court erroneously held that it was precluded from modifying the November 14 Order by 11 U.S.C. Section 328, even on the alleged grounds of fraud or mistake. Sections 328 does not address the division of fees among co-counsel. Section 328 does not preclude modification of the November 14, 2000 Order, particularly where the disputed portion of the Order was the product of a fraud or mistake, and no pre-appointment hearing under Section 328 on the division of attorneys' fees was ever held.

3. The Bankruptcy Court violated Williams' due process rights because the Court erroneously drew factual inferences against Williams and applied the fact-intensive doctrine of "laches" without holding an evidentiary hearing, and without finding any detrimental reliance on Brown's part.

4. The Bankruptcy Court erroneously denied Williams' recovery of his advanced out-of-pocket costs, contrary to the plain language of the Contract for Services with the Trustee, and despite the fact that this issue was not before the Bankruptcy Court to decide.

### B. *Appellee Brown's Position*

Appellee Brown counters Williams' position with the following arguments:

1. Williams waived its due process argument as it relates to the lack of an evidentiary hearing by failing to raise that issue before the Bankruptcy Court.

2. The Bankruptcy Court correctly held that Section 328(a) applies to both Brown's and Williams' fee applications because both firms' fee arrangements were approved by the Bankruptcy Court at the time of their respective retention by the Trustee, and both arrangements provided for contingency fees which are provided for in only one section of the Bankruptcy Code, Section 328(a).

3. The Bankruptcy Court correctly held that it could not use Code Section 105(a) to modify the November 14, 2000 Order as requested by Williams (on the basis that it did more of the litigation work than Brown) where, as here, there is a specific statute applicable to the fee agreement approved up front, including contingent fee agreements, because to do so would contravene *Northwest[Norwest] Bank Northington[Worthington] v. Ahlers,* 485 U.S. 197[, 108 S.Ct. 963, 99 L.Ed.2d 169] (1988), in which the Supreme Court held that Bankruptcy Courts must exercise their equitable powers within the confines of the Bankruptcy Code.

4. The Bankruptcy Court correctly found that the relief sought by Williams was barred under the doctrine of laches where Williams first sought modification of the November 14, 2000 Order sixteen months after its entry.

5. The Bankruptcy Court correctly held that Williams had failed to establish the requirements set forth in Section 328(a) for modification of the November 14, 2000 Order because nothing had occurred to make the Order inequitable or unreasonable.

6. Williams' due process and "fraud on the Court" arguments are without merit because Williams had *actual* notice of and actively participated in the October 19, 2000 hearing, and had full and unfettered opportunity

to review the proposed Order and the attachments at least twice prior to the hearing and one more time immediately thereafter: Mr. Williams' admission that he did not read the November 14, 2000 Order or the attachments "carefully" should not be used as a means to renegotiate the fee agreement.

7. There was no abuse of discretion in the Court's failing to award costs.

## II. STANDARD OF REVIEW

▪▪▪ A District Court reviews the Bankruptcy Court's factual findings under the clearly erroneous standard. *See In re Club Associates,* 951 F.2d 1223, 1228–29 (11th Cir.1992). The Bankruptcy Court's interpretation and application of the Bankruptcy Code are subject to *de novo* review. *See In re James Cable Partners, L.P.,* 27 F.3d 534, 536 (11th Cir.1994); *In re Lancaster Steel Co.,* 284 B.R. 152, 157 (S.D.Fla.2002); *see also Southland Corp. v. Toronto-Dominion,* 160 F.3d 1054, 1057 (5th Cir.1998) (a finding of fact premised on an incorrect legal standard loses the protection of the clearly erroneous standard of review). In this case, the Bankruptcy Court concluded without an evidentiary hearing that it was precluded from modifying its November 14, 2000 Order. Accordingly, this Court will review the Bankruptcy Court's decision *de novo.*

## III. DISCUSSION

▪▪▪ As a general principle, the Bankruptcy Court has "equitable power to correct, modify, or vacate its own interlocutory orders." *In re Coggin,* 30 F.3d 1443, 1450 (11th Cir.1994). However, the Bank-

ruptcy Court can only exercise such equitable powers within the confines of the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In this case, the Bankruptcy Court's November 14, 2000 Order was non-final.[3] Thus, under *In re Coggin* and *Norwest,* the Bankruptcy Court had equitable power to modify that Order so long as doing so was not in conflict with any provision in the Bankruptcy Code. Consistent with that principle, the Bankruptcy Court ruled that 11 U.S.C. Section 328 prevented it from modifying the November 14, 2000 Order.

Section 328(a) applies here to Brown's and Williams' fee applications because both firms' fee arrangements were approved by the Bankruptcy Court at the time of their respective retention by the Trustee, and both arrangements provided for contingency fees which are provided for in only one section of the Bankruptcy Code, Section 328(a). (ADE # 361 at ¶ 15). Section 328(a) provides in pertinent part that:

The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. *Notwithstanding the terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in*

---

**3.** "Orders appointing counsel under the Bankruptcy Code are interlocutory and are not generally considered final and appealable." *In re Smyth,* 207 F.3d 758, 763 (5th Cir.2000) (*citing In re American Cabinets &*

*Woodcrafting Corp.,* 159 B.R. 969, 971 (M.D.Fla.1993)); *see also* November 14, 2000 Order, ADE # 109 at ¶ 3 (providing that the employment of Williams was subject to review by the Bankruptcy Court).

*light of developments unanticipatable at the time of the fixing of such terms and conditions.*

11 U.S.C. § 328(a) (emphasis added). Thus, the Bankruptcy Court is empowered by Section 328 to reduce the rate of compensation provided for in its prior Order if it finds that the terms and conditions of professional employment "prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions." *Id.*

■ The Bankruptcy Court recognized this but found that "there are strong policy reasons why courts have 'rarely altered' previously approved contingency fee arrangements." (ADE # 361 at ¶ 19). The Bankruptcy Court then proceeded to hold that, "[b]ased upon its review of the various pleadings, memoranda and affidavits filed ... by the Gary Firm, the *only* possible basis for modification [of the November 14, 2000 Order] is the Gary Firm's assertion that it did more of the litigation-related work than Brown in connection with prosecution of the state court case." (ADE # 361 at ¶ 22). The Bankruptcy Court rejected this basis for modifying the Order on the basis that

> because the Gary Firm was brought into this litigation as "lead trial counsel," it cannot be said that doing more litigation work was a circumstance not capable of being anticipated at the time of the Gary Firm's retention as contemplated by Section 328(a). The Court finds that any alleged "misunderstanding" as to the terms of the fee division is belied by the Gary Firm's actions subsequent to the entry of the November 14, 2000 Order and could have been anticipated at the time. Based on the record before it, the Court finds that there is no basis to modify the terms of the November 14, 2000 Order pursuant to 11 U.S.C. § 328(a).

(ADE # 361 at ¶ 22). Thus, despite the fact that the Bankruptcy Court specifically limited the April 14, 2002 hearing to a non-evidentiary hearing on the narrow legal issue of "whether the Court can modify its November 14, 2000 Order," (ADE # 234 at 2; *see also* ADE # 316 at 56–57), the Bankruptcy Court in actuality found that it did have *power* to modify its November 14, 2000 Order pursuant to the specific language of Section 328(a), but *declined* to do so on the basis that there was insufficient evidence in the record to support such a finding.

The Court, however, made this finding without conducting an evidentiary hearing contrary to disputed issues of material fact raised by Williams regarding the existence of fraud and mistake related to the fee agreement. *See* ADE # 361 at ¶ 1 ("This Court's hearing on April 17, 2002 was a non-evidentiary hearing. Thus, this Court only adopts the undisputed facts as recognized by [Brown] and the Gary Firm."). Williams raised the issue of whether an evidentiary hearing should take place in this case: At the Bankruptcy Court's April 17, 2002 non-evidentiary hearing, counsel for Williams stated that after the narrow legal issue of the Court's power to modify the November 14, 2000 Order was resolved, the next step should be an evidentiary hearing on the issue of whether the Order should be modified, and then another evidentiary hearing on the fee division provision between Brown and Williams. (ADE # 316 at 24–25).

The District Court is not "authorized to make independent factual findings; that is the function of the bankruptcy court." *In re Sublett,* 895 F.2d 1381, 1384 (11th Cir. 1990) ("If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court ... must remand the case to the bankruptcy court for the nec-

essary factual determination") (internal quotes and citations omitted). Accordingly, this case should be remanded to the Bankruptcy Court for an evidentiary hearing on the factual issue of whether the terms and conditions of appointed counsel's employment in this case "prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). *Cf. In re Ross*, 94 B.R. 210, 216 (M.D.Ga.1988) (remanding to the Bankruptcy Court to make "specific findings" that "the contingency fee terms contained in fee agreement [were] improvident by reason of subsequent development" being "unanticipatable" at the time of the order fixing compensation: "the Bankruptcy Order offers hints and allusions of such, unanticipatable developments, but the court below, treading delicately, failed to make such findings specifically and failed to tie those findings to the appropriate legal standard").

■ Likewise, the Bankruptcy determined without an evidentiary hearing that each firm would bear its "out-of-pocket expenses," (ADE # 361 at 17 n. 13), based on language in the October 18, 2000 letter stating that, "[e]ach law firm shall bear its own costs with regard to travel expenses and deposition fees." (October 18, 2000 letter at ¶ 5, ADE # 109). The language relied on by the Bankruptcy Court appears to conflict with the terms of the fee contract approved in the November 14, 2000 Order which provides that advanced costs were to be deducted from the Trustee's portion of the recovery and paid to coun-

sel. *See* Fee Contract, ADE # 109, at ¶ 1.1. That fee contract was incorporated in the Bankruptcy Court's November 14, 2000 Order providing that the Williams law firm would be authorized to be employed "as co-counsel upon the terms and conditions set forth in the Chapter 7 Trustee's Motion to Employ Special Co–Counsel, *and as outlined within the October 18, 2000 letter attached hereto, as amended, in the Contract for Services attached hereto."* (ADE # 109 at ¶ 2) (emphasis added). Thus, the Court is presented with two seemingly conflicting provisions within the Bankruptcy Court's Order. (*Compare* October 18, 2000 letter ¶ 5, ADE # 109, *with* Fee Contract, ADE # 109, ¶ 1.1, both incorporated into the Bankruptcy Court's December 24, 2002 Order). The Bankruptcy Court should conduct an evidentiary hearing to resolve whether payment of costs to counsel is warranted under the November 14, 2000 Order.[4]

### IV. *CONCLUSION*

In accordance with the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Judge Steven H. Friedman's December 24, 2002 "Order Partially Granting Richard L. Brown, P.A.'s Motion for Final Compensation as Special Counsel to the Trustee Pursuant to the Court's November 14, 2000 Order Granting Chapter 7 Trustee's Motion to Employ Special Counsel" is hereby **REVERSED** as follows:

(A) It is hereby determined that the Bankruptcy Court has the power to modify its November 14, 2000

---

4. *Cf. In re Sublett*, 895 F.2d at 1384 ("Under traditional principles of contract law, the bankruptcy court's interpretation of the loan instruments in this case is a legal determination subject to *de novo* review if the contractual language is unambiguous. Where the language is ambiguous, however, and requires consideration of extrinsic evidence of the ac-

tual intentions of the parties, *the bankruptcy court's determinations as to those intentions are findings of fact* subject only to 'clearly erroneous' review. Furthermore, the initial question whether the contractual language is ambiguous or not is itself a question of law") (emphasis added).

Order consistent with the specific language of 11 U.S.C. § 328(a).

(B) The matter is hereby **REMANDED** to the Bankruptcy Court which shall conduct an evidentiary hearing consistent with this opinion (1) on the circumstance warranting modification of the November 14, 2000 Order;[5] and (2) on the distribution of costs to counsel.

2. Williams' Motion for Leave to File Reply in Support of Williams' Prayer for Appellate Remand to A Different Bankruptcy Judge filed on December 11, 2003 is hereby **GRANTED** as follows: the Court has considered Williams' Reply in support of its request that the case be remanded to a Bankruptcy Judge other than the Honorable Steven H. Friedman, and has reviewed the argument and pleadings regarding that issue. Williams' request that the case be remanded to a Bankruptcy Judge other than the Honorable Steven H. Friedman is hereby **DENIED.**

3. Brown's Motion to Strike Portion of Appellants' Reply in Support of Motion To Relinquish Jurisdiction To Bankruptcy Court [DE # 24] is hereby **DENIED.**

4. Williams' Motion to Relinquish Jurisdiction to Bankruptcy Court [DE # 20] is hereby **DENIED as MOOT.**

5. The Clerk of the Court shall **CLOSE** this case.

6. All other pending motions are hereby denied as **MOOT.**

---

[5] This Court's holding does not affect the Bankruptcy Court's holding that "the Gary Firm is precluded from seeking modification of the previously-approved fee arrangement by any rule or statute *other than Section 328,* based on the doctrine of laches." (ADE # 361 at ¶ 17) (emphasis added). However, the Court notes that there appear to be issues of fact that were not resolved by the Bankruptcy Court in any evidentiary hearing regarding whether Williams *unreasonably* delayed raising the fee dispute to the Court; whether Brown relied on Williams' "silence"; and whether there was any prejudice to Brown by such delay. *See e.g.,* ADE # 200, Ex. A, Ex. 21 thereto.